# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CR-182-TCK |
| ) | |
| JAMES LEE WATSON, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 268). The United States filed a response opposing the Motion (Doc. 270).

**I. Factual Background**

James Lee Watson ("Watson") and two co-defendants committed a series of armed robberies and attempted armed robberies in Tulsa, Oklahoma, during an eleven-day period in October 2004. Watson was charged in a 19-count indictment with (1) conspiracy, (2) four armed robberies and two attempted armed robberies in violation of the Hobbs Act, (3) six counts of using a firearm during a crime of violence, and (4) six counts of possessing a firearm and ammunition after a felony conviction. (Doc. 15).

At trial, Watson's co-defendants testified about his participation in the crimes and a Tulsa police officer testified about Watson's capture immediately after one of the robberies. The government called a witness, Linda King, who described Watson's efforts to use her to create a false alibi. On March 29, 2005, a jury convicted Watson of all charges. (Doc. 107).

Watson filed a motion for new trial based on "newly discovered evidence" in the form of a written statement, ostensibly written by his co-defendant, Kenneth Butler ("Butler"), stating that Butler had untruthfully implicated Watson in the crimes of which he was convicted. (Doc. 92). The district court held an evidentiary hearing on the motion, in which Butler testified that he did not write the affidavit in question. (Mot. Hrg. Tr.; Doc. 120 at 42-44). The district court rejected the allegation that Butler had recanted his trial testimony, finding: "With regard to Mr. Butler's situation, the claim involving a recantation of his testimony, there's been none. There is a document that's been introduced that appears it may have been forged. And there's certainly nothing from Mr. Butler in his testimony that indicates that he wishes or does in any way recant his testimony." (Id. at 53). The district court denied the motion for new trial. (Id. at 52). The Tenth Circuit affirmed Watson's conviction and the district court's denial of his motion for new trial. *United States v. Watson*, 207 F. App'x 913 (10th Cir. 2006) (unpublished).

## II. Procedural Background

After his conviction, Watson filed a motion under 28 U.S.C. § 2255 alleging ineffective assistance of counsel. (Doc. 168). The Tenth Circuit affirmed the district court's denial of Watson's § 2255 motion. *United States v. Watson*, 432 F. App'x 778 (10th Cir. 2011) (unpublished).

In addition to ruling on Watson's direct appeal and § 2255 motion, the Tenth Circuit has dismissed or denied his other post-conviction appeals: *United States v. Watson*, No. 07-5002; *In re James Lee Watson*, No. 07-5043; *United States v. Watson*, No. 07-5084; *In re: James L. Watson*, No. 12-5142; *In re: James Lee Watson*, No. 14-5098; and *United States v. Watson*, 613 F.App'x 711 (10th Cir. 2015) (unpublished).

In 2016, Watson asked the Tenth Circuit for permission to file a successive § 2255 motion in this Court to vacate several of his convictions based on *United States v Davis,* 139 S.Ct. 2319 (2019). *See In re: Watson*, Tenth Circuit No. 16-5062. That proceeding remains abated.

In 2019, Watson requested compassionate release/reduction in sentence ("RIS") from the Warden at his Federal Correctional Complex based on his having several medical problems, primarily sickle cell disease. (Doc. 268 at 14). The Warden responded that the prison would not pursue a request for compassionate release on Watson's behalf. (Id. at 16; See Exhibit 1). The Warden explained that to receive compassionate release based on a medical condition, an inmate must be "experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility." (Id.). The Warden further explained that a reduction in sentence could also be considered if an inmate is either "completely disabled, meaning he cannot take care of himself and is completely confined to a bed or chair;" or "he is capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." (Id.). After reviewing Watson's comprehensive medical summary, the Warden found that Watson's condition "was not at a point where he had cognitive or physical limitations that substantially diminished his ability to function in a correctional facility," and denied Watson's motion. (Id.) Watson did not appeal his RIS denial.

Watson has now filed a motion before this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), pursuant to recent amendments to that section under the First Step Act of 2018. (Doc. 268). Watson asserts that he is suffering serious medical illnesses, including sickle cell anemia, which amount to "extraordinary and compelling circumstances" warranting his early release from custody. (Id. at 5-10).

### III. Analysis

The First Step Act took effect on December 21, 2018, adopting a variety of criminal justice reforms, including a change to the Compassionate Release provision in 18 U.S.C. § 3582 (c)(1)(A). First Step Act of 2018, Pub. L. 115- 391, 132 Stat. 5194 (2018). Previously, that statute identified an exception to the general rule that sentences may not be modified once imposed. It had allowed a district court to modify a defendant's sentence if, after the Director of the Bureau of Prisons filed a motion seeking a modification, the court considered the § 3553(a) factors, and found either (i) "extraordinary and compelling reasons" or (ii) that an elderly defendant had served at least 30 years of a mandatory life term under § 3559(c) and did not pose a danger to the community, and that the reduction was "consistent with applicable policy statements issued by the Sentencing Commission."

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to provide an avenue for prisoners to seek compassionate release when the Director of the Bureau of Prisons has failed or declined to do so. It now provides that the court may reduce the defendant's term of imprisonment either "upon motion of the Director of the Bureau of Prisons," or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A)(2020).

The Court finds Watson has failed to meet the First Step Act's precondition for a defendant to file a motion for compassionate release under § 3582(c)(1)(A): exhausting his administrative appeals. Although Watson filed a request for a reduction in sentence with his facility, the warden declined to pursue a request on his behalf and advised Watson he could file an appeal within 20 calendar days. Watson did not file an appeal. Therefore, he has not fully exhausted all

administrative rights, and does not qualify to file a motion on his own behalf under 18 U.S.C. §3582(c)(1)(A).

Further, a reduction in Watson's sentence would not be consistent with the Sentencing Commission's applicable policy statements. The First Step Act did not change the standards for compassionate sentence reductions. Although the First Step Act amended § 3582(c)(1)(A) to permit inmates to file their own motions seeking compassionate release, it did not alter the requirements for granting such a motion. In order to grant compassionate release motions, courts must still find either that an inmate is over 70 and meets the other requirements of § 3582(c)(1)(A)(ii), or that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Guidelines policy statement appears at § 1B1.13, which largely mirrors the statutory text of § 3582(c)(1)(A), with one notable difference: § 1B1.13 requires that before reducing a defendant's term of imprisonment, the court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g)." USSG § 1B1.13(2). In addition, Application Note 1 to the policy statement lists four types of circumstances that provide "extraordinary and compelling reasons" for reducing a defendant's sentence:

(A) Medical Condition of the Defendant (the defendant suffers from (i) a terminal illness or (ii) from a serious physical or medical condition, functional or cognitive impairment, or deteriorating health because of aging that "substantially diminishes" the defendant's ability to provide self-care;

(B) Age of the Defendant (the defendant is over 65, suffering a serious deterioration in health, and has served 10 years or 75% of his sentence);

(C) Family Circumstances (caregiver of defendant's minor children has died or been incapacitated, or defendant's spouse has been incapacitated and defendant would be the only available caregiver); or

(D) Other Reasons ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

*See* USSG § 1B1.13, Application Note 1.

Watson premises his request on his health, but he cannot show extraordinary or compelling reasons under either of the specific circumstances set forth in Application Note 1(A) to § 1B1.13. Although Watson lists multiple conditions that adversely affect his health, and claims his sickle cell anemia is terminal, he cannot show that his conditions meet the relevant definition. Specifically, BOP's program statement defines a "terminal illness as one whose life expectancy is 18 months or less." The medical assessments attached to Watson's motion do not establish his medical conditions qualify as terminal under this standard.

Further, Watson does not suffer from a condition or impairment that substantially diminishes his ability to provide self-care within the environment of a correctional facility. The warden found no medical documentation which demonstrated Watson could not adequately perform "instrumental activities of daily living." In light of these findings, and in the absence of any evidence to the contrary, Watson cannot meet his burden of showing extraordinary and compelling reasons for a reduction under § 1B1.13 Application Note 1(A).

Finally, Watson does not satisfy the requirements of § 3559 (c) as the court finds he still poses a danger to the community. First, Watson's offenses of conviction involved a multi-day string of six armed robberies, in which Watson and his codefendants repeatedly pointed guns at store employees. Next, his criminal history reflects crimes that began at age 19 with joyriding and larceny, but graduated quickly to armed robbery. He committed the charged robberies while on suspended Oklahoma state sentences, and less than two years after his release from incarceration. Watson's many crimes placed him in Criminal History Category V. Third, Watson's disciplinary history contradicts his claims that imprisonment has changed him. A review of the prison

disciplinary reports Watson submitted with his motion reveal that he has accrued several disciplinary reports while incarcerated, ranging from drug possession to assault. His earliest infraction occurred in 2006, and the remainder span his entire period of imprisonment, including one as recent as October 2019.

Finally, releasing Watson would minimize the severity of his offense. Even if Watson were sentenced today, with the benefit of the First Step Act's revision of the stacking provisions of § 924(c), Watson would still face a 42- year sentence for his six brandishing convictions, in addition to the 150- month sentence this court imposed on the robbery and felon-in-possession charges. He has served only a small fraction of that sentence. Accordingly, the court finds none of the factors used in evaluating compassionate release requests weigh in favor of release.

Therefore, Watson's Motion for Compassionate Release under the First Step Act (Doc. 268) is **DENIED**. Watson has not exhausted his administrative rights as required before he may file a motion under the First Step Act's amendments to § 3582(c)(1)(A), and even if he had met those requirements, Watson cannot show that his medical conditions constitute extraordinary and compelling circumstances warranting compassionate release.

**IT IS SO ORDERED this 16th day of April, 2020.**

TERENCE C. KERN
United States District Judge