**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-CR-182-TCK-02 |
| | ) | |
| JAMES LEE WATSON, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Amended Motion for Compassionate Release under the

First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 309). The United States filed a Response

opposing the Motion (Doc. 313), and Defendant filed a Reply. (Doc. 315).

**I. Factual Background**

James Lee Watson ("Watson") and two co-defendants committed a series of armed

robberies and attempted armed robberies in Tulsa, Oklahoma, during an eleven-day period in

October 2004. Watson was charged in a 19-count indictment with (1) conspiracy, (2) four armed

robberies and two attempted armed robberies in violation of the Hobbs Act, (3) six counts of using

a firearm during a crime of violence, and (4) six counts of possessing a firearm and ammunition

after a felony conviction. (Doc. 15).

At trial, Watson's co-defendants testified about his participation in the crimes and a Tulsa

police officer testified about Watson's capture immediately after one of the robberies. The

government called a witness who described Watson's efforts to use her to create a false alibi. On

March 29, 2005, a jury convicted Watson of all charges. (Doc. 76, 107).

**II. Procedural Background**

This Court sentenced Watson to 1,734 months of imprisonment, (145 years, 3 months) (Doc. 107). The sentence included terms of imprisonment as follows: 60 months as to Count One; 150 months as to Counts Two, Four, Six, Eight, Ten, Twelve, and Fourteen through Nineteen ("Concurrent Counts"); 84 months as to Count Three; and 300 months on each of Counts Five, Seven, Nine, Eleven, and Thirteen ("Stacked 924(c) Counts"). Counts One, Two, Four, Six, Eight, Ten, Twelve, and Fourteen through Nineteen ran concurrently. Counts Three, Five, Seven, Nine, Eleven, and Thirteen ran consecutively to each other and to the remaining Counts. Watson received a 150-month sentence on the Concurrent Counts and a 1,593-month sentence on the Stacked 924(c) Counts.

The Tenth Circuit affirmed this Court's rulings and Watson's conviction. (Doc. 135). This Court later denied Watson's § 2255 motion; in 2011, the Tenth Circuit granted him a certificate of appealability but eventually affirmed the denial. (Docs. 190, 222). In the ensuing decade, Watson has filed numerous challenges to his conviction and sentence, which both this Court and the Tenth Circuit have rejected. (*See e.g*., Docs. 235, 248, 262; *In re: James L. Watson*, No. 12-5142; *In re: James Lee Watson*, No. 14-5098; and *United States v. Watson*, 613 F. App'x 711 (10th Cir. 2015) (unpublished).

On March 4, 2020, Watson sought compassionate release under the First Step Act. (Doc. 268). This Court denied his motion, finding he had failed to exhaust his administrative appeal of the Bureau of Prisons' refusal to file a compassionate release motion on his behalf. (Doc. 271).

During Watson's appeal, the Tenth Circuit held that § 1B1.13 does not apply to compassionate release motions filed by prisoners. *See United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021). Recognizing this, the Tenth Circuit remanded to allow this Court to consider

Watson's motion anew, consistent with the three-step process it had since adopted for evaluating prisoner's motions. (Doc. 299). On remand, this Court reinstated Watson's compassionate release motion, and Watson filed an amended motion, again arguing that his lengthy sentence and medical conditions warrant a reduction of his sentence to time served. (Doc. 309).

Law enforcement arrested Watson on October 14, 2004. He has been detained since then and served approximately 209 months (17 years, 5 months) of his sentence. He has served his entire sentence on the Concurrent Counts and 59 of the 1,593 months on the Stacked 924(c) Counts.

Since Watson's sentencing in 2005, significant reforms have been made within the criminal justice system to avoid excessively long prison sentences. Although many changes have not been deemed retroactively applicable, numerous district courts have found that the massive sentencing disparities caused by recent legislation, as well as a combination of other factors, may warrant a reduction in sentence through 18 U.S.C. § 3582(c)(1)(A).

### III. Applicable Law

In December 2018, Congress enacted the First Step Act ("FSA") which modified §3582(c)(1) of Title 18 of the United States Code to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) now reads:

> (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment),

after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under § 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

If the Court finds the exhaustion requirements are met and extraordinary and compelling circumstances are present, the Court may reduce a term of imprisonment "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Further, the statute requires the Court "to consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." *Id*.; See also, *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021).

### A. Exhaustion Requirement

Although there has been a significant split among district courts on whether the exhaustion requirement of § 3582(c)(1)(A) is jurisdictional and/or excusable, the Tenth Circuit Court of Appeals has held that exhaustion should be "treat[ed] as a mandatory claim-processing rule." *United States v. Watson*, No. 20-5046, ft.n. 1 at 2 (10th Cir. June 24, 2021) citing *Hamer v. Neighborhood Hous. Servs. Of Chicago*, 138 S.Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, *but they may be waived or forfeited*." (emphasis added)).

### B. Extraordinary and Compelling Circumstances

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a

reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021); *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019). The applicable policy statement of the Sentencing Commission can be found at U.S.S.G. § 1B1.13. The commentary to this section states:

1. Extraordinary and Compelling Reasons. –Provided the defendant meets the requirements of subdivision (2) [not a danger to society], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant. –

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. –The defendant (i) is at least 65 years old; (ii) is experiencing serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances. –

(i) The death or incapacitation of a caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

However, the Tenth Circuit has recently clarified this position and held that § 1B1.3 is not binding on district courts "when a defendant files a motion to reduce sentence under § 3582(c)(1)(A) directly with the district court." *Id.*

**C. Sentencing Commission Policy and 18 U.S.C. § 3553(a) Factors**

Section 3582(c)(1)(A) allows for a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that– (i) extraordinary and compelling reasons warrant such a reduction; … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

The § 3553(a) "factors include, among other things, '(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as '(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant.'" *United States v. Rodriguez-Orejuela*, 2020 WL 2050434, at *4 (S.D. Fla. Apr. 28, 2020) (quoting 18 U.S.C. § 3553(a)).

Under § 1B1.13 of the U.S. Sentencing Guidelines, the Court may reduce a term of imprisonment after consideration of the § 3553(a) factors, if the Court determines that:

(1) (A) extraordinary and compelling reasons warrant the reduction;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(1)-(3).

**IV. A Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) is Warranted**

**A. Watson Has Met the Exhaustion Requirements of § 3582(c)(1)(A)**

As noted *supra*, Watson submitted a written request to the warden requesting a compassionate release pursuant to § 3582(c)(1)(A)(i). More than 30 days have elapsed since the warden at his facility received his request. Therefore, Watson has fully exhausted his administrative appeals and has met the exhaustion requirements under 18 U.S.C. § 3582(c)(1)(A).

**B. Extraordinary and Compelling Circumstances Justify a Reduction in Sentence**

In considering Watson's motion, the Court has reviewed the three-part test adopted by the Tenth Circuit in *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021) (citing *United States v. Jones,* 980 F.3d 1098, 1107 (6th Cir. 2020)). Step one requires the Court to determine at its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. Step two requires that the Court find whether such reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. Step three requires the Court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction authorized by steps one and two is warranted under the particular circumstances of the case. However, because the policy statements of the Sentencing Commission have not been updated since enactment of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to file motions for compassionate release directly with the Court, the existing policy statements are not applicable to motions filed directly by defendants. *Id*. at 12. Further, when any of the three prerequisite steps are lacking, the Court may deny a compassionate release motion and does not need to address the other steps. The Court must address all three steps when granting such motion. *Id.* at 13 n.4. (citing *United States*

*v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)). See also *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021).

The Government concedes that this Court may exercise its discretion to reduce Watson's sentence and asserts "this Court should limit any compassionate release reduction to the minimum 504-month term Watson would face if sentenced today." (Doc. 313, p. 6).  However, the Court is not bound by this limitation. *In United States v. Hicks*, No. 98-CR-06-TCK, (Doc. 129) (N.D. Ok. Apr. 20, 2021) the defendant committed six armed robberies in Tulsa and Glenpool and received a sentence of 1,350 months, or 112 years and six months as a result of six stacked 924(c) convictions. This Court noted that Hicks would be subject to a sentence of 30 years on the 924(c) convictions. *Id.* at 8. After serving 23 years the Court granted Hicks' motion for compassionate release and sentenced him to time served plus 14 days of quarantine prior to release. *Id.* at 12-13. Watson's crime is similar to Hicks. Both committed six armed robberies in and around the Tulsa area. Both received excessive sentences for stacked 924(c) convictions.

Further, the discrepancy between Watson's current sentence and the sentence he would be subject to if convicted today is not the only sentencing disparity in this case. Watson committed the six robberies with two co-defendants, Kenneth Antonio Butler and Nicole Cassares. The United States and Watson conducted plea negotiations prior to trial. Watson rejected an offer of 30 years imprisonment and elected to go to trial. Unlike Watson, both Butler and Cassares entered guilty pleas. Butler pled guilty to Counts Three and Five, both 924(c) charges.(Doc. 89). He received a sentence of 240 months; 84 months as to Count Three and 156 months as to Count Five. *Id*. Butler was released from BOP on October 26, 2021. Cassares plead guilty to one 924(c) Count and Aiding and Abetting .(Doc. 88). She received an 84 month sentence and was released from BOP on May 27, 2011. Watson's co-defendants, who were no less culpable, received far more lenient sentences

and have been released. Ultimately, Watson received 125 years and three months more imprisonment than Butler and 138 years and three months more imprisonment than Cassares.

The Government claims that "the seriousness of his six armed robberies and his consistent and serious disciplinary history, weigh against granting the time-served sentence he requests." (Doc. 313, p. 5). However. many courts have granted compassionate relief requests with similar criminal charges. *See United States v. Hicks, supra* (sentence reduced to time served plus fourteen days for six armed robberies); *United States v. Maumau*, 993 F.3d 821 (Tenth Cir. 2021) (sentence reduced to time served for three armed robberies); *United States v. Ezell*, No. 02-815-01, 2021 WL 510293 (E.D. Pa. Feb. 11, 2021) (sentenced reduced to time served for six armed robberies); *United States v. Fowler*, No. 4:92-CR-177-Y, Doc. No. 52 (N.D. Tex. Feb. 24, 2021) (sentence reduced to time served for three armed robberies). Also, importantly, no injuries occurred in Watson's crimes. The worst outcome was a struggle with an employee that caused a display rack to fall (Doc. 313, pp. 1-2).

Therefore, the extraordinary and compelling circumstances presented in the instant case relate in part to the lengthy sentence of 1,734 months imprisonment. Further, Watson also has medical issues including sickle cell anemia, cardiac, and urological issues. He suffered a pulmonary embolism in 2015. Each of these comorbidities is recognized by the Center of Disease Control ("CDC") as placing him at increased risk of severe illness from the virus that causes COVID-19. Therefore, Watson's medical conditions, in combination with the ongoing COVID-19 pandemic, qualify as extraordinary and compelling reasons warranting compassionate release.

### C. A Reduction in Sentence is Warranted After Consideration of the 18 U.S.C. § 3553(a) Factors and Sentencing Guidelines Policy

Having established that Watson has exhausted his administrative appeal, and that extraordinary and compelling circumstances exist, the Court must consider the factors under 18 U.S.C. § 3553(a) and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted.

Evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." *Id.* Indeed, the Court continued, "Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*. at 1242.[1] See e.g. *United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) (granting a sentence reduction under § 3582(c) to a defendant who ran a drug-trafficking organization, given that "[the defendant], in the face of a life sentence, assumed a positive outlook

---

[1] "In addition, evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training…or other correctional treatment in the most effective manner." §§3553(a)(2)(B)-(D); see *McMannus*, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing…deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct"). *Id*.

and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

Looking to the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1), Watson recognizes the severity of his wrongdoing and has committed himself to proving his rehabilitation. A review of Watson's Inmate Profile does not show that he is a danger to the community. Only two incidents involved physical altercations. One occurred when a corrections officer groped Watson during a pat down on February 4, 2021 (Doc. 313-1, p. 8). That event coincides with a complaint from Watson of sexual assault/abuse by staff (Doc. 313-1, p. 20). The other occurred in 2008 (Doc. 313-1, p. 15). These isolated events do not show Watson is a danger to the community. Rather, his Inmate Profile shows a history of rehabilitation. Prior to the offensive conduct, Watson had a long history of substance abuse beginning at age twelve. He abused marijuana and methamphetamine. Once imprisoned, Watson attended drug education classes despite the fact that he would not earn good time credit. He completed BOP's drug education program on November 15, 2006 and completed BOP's non-residential drug treatment program on June 7, 2017 (Doc. 313-1, p. 1). He also completed his GED on January 19, 2006. *Id.*

Considering Watson's lengthy sentence and serious health conditions, combined with his significant efforts at rehabilitation, the Court finds extraordinary and compelling circumstances which form the basis for relief. Therefore, the Court finds that a reduction under § 3582(c)(1)(A) to a sentence of time served is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a).

## V. CONCLUSION

Based on the foregoing, the Court grants Watson's Amended Motion for Compassionate Release (Doc. 309). Defendant's sentence is hereby reduced to time served, plus 14 days. The

fourteen-day period prior to release from the Bureau of Prisons should be spent in quarantine for protection of the public. The previously imposed fine, term of supervised release and conditions of supervision remain unchanged.[2] The Bureau of Prisons is directed to provide a plan of release to the United States Probation office for the Northern District of Oklahoma expeditiously.

**IT IS SO ORDERED this 15th day of April, 2022.**

TERENCE C. KERN
United States District Judge

---

[2] Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.